THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* RALPH RENO, Plaintiff in Error.

*Opinion filed February 16, 1927.*

1. CRIMINAL LAW—*plaintiff in error cannot object to argument not preserved in abstract.* A plaintiff in error cannot contend that the State's attorney was guilty of prejudicial misconduct in his argument to the jury where no remarks of counsel are preserved in the abstract of the record.

2. SAME—*when bullet found at scene of crime is not competent.* In a prosecution for murder, a bullet found in the room where the body of the deceased was discovered is not admissible in evidence where it was found twelve hours after the commission of the crime, two previous searches having failed to reveal anything, and where there is no evidence as to how long the bullet had been there or in any way connecting it with the defendant or with the homicide.

3. SAME—*what evidence is admissible although it tends to show another crime.* In a prosecution for murder, a witness who lived in the same apartment building where the body of the deceased was discovered may testify that a few minutes after the homicide was committed she was shot upon opening her door in answer to a knock by a masked man whom she identifies as the defendant, where another witness living in the same building testifies that about the same time she saw a strange man about the place, (whom she describes,) and that she heard shots fired, followed by another shot about five or ten minutes later, the latter shot apparently coming from the hall.

4. SAME—*when defendant's cap may be admitted in evidence.* It is not prejudicial error, in a prosecution for murder, to admit

in evidence a cap found in the defendant's room, where the defendant identifies the cap as his own and there is evidence that a man who was seen with a deadly weapon near the place where the crime was committed and at about the time of its commission wore a cap of the same description, although there is other evidence that the man wore a hat.

5. SAME—*purpose of instructions.*   The object of giving instructions is that the jury may be informed as to the law pertinent to the facts and circumstances in evidence in the case, to aid them in giving proper consideration to such facts and circumstances.

6. SAME—*when refusal of an instruction that defendant's wife could not testify is prejudicial.*   Where the defendant in a prosecution for murder testifies that at the time of the commission of the crime he was at home in bed with his wife and the wife is not offered as a witness, it is prejudicial error to refuse to give an instruction that the wife was not a competent witness in the defendant's behalf, as the jury may consider the failure to offer her as a witness in support of the defendant's alibi as affecting the credibility of the defendant's testimony.

7. SAME—*instruction not based on evidence is improper.*   An instruction, even though it embodies correct propositions of law, should not be given when there is no proper basis for it in the evidence.

8. SAME—*when instruction as to alibi is erroneous as not based on evidence.*   An instruction that the defense of alibi is not available unless it covers the whole of the time of the commission of the crime, rendering it impossible, or highly improbable, that the defendant could have committed the act, is improper where the defendant is the only available witness as to his alibi and his testimony covers the entire time of the crime, as the instruction, under the circumstances, is not based on the evidence and may tend to cause the jury to look with suspicion on the defendant's testimony.

9. SAME—*judgment of conviction will be reversed for prejudicial error.*   The Supreme Court will not set aside a judgment of conviction for trivial error, but before a judgment depriving a defendant of life or liberty is affirmed the court must be able to say that the record shows that the defendant has not been prejudiced by error in the trial court.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. HARRY B. MILLER, Judge, presiding.

WILLIAM R. McCABE, for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, ROBERT E. CROWE, State's Attorney, and MERRILL F. WEHMHOFF, (EDWARD E. WILSON, CLARENCE E. NELSON, and HAROLD LEVY, of counsel,) for the People.

Mr. JUSTICE HEARD delivered the opinion of the court:

Plaintiff in error, Ralph Reno, was indicted, tried, convicted and sentenced to death in the criminal court of Cook county for the murder of Mary Palombizio. He prosecutes this writ of error to review the judgment of the criminal court.

On March 23, 1925, deceased and her husband lived in the rear apartment on the third floor of a three-story apartment building at 1345 West Taylor street, Chicago. Marie Pacifico, with her husband, children and a boarder, lived in the front apartment on the same floor. The building, on the south side of Taylor street, had a front entrance, and a side entrance which was on the west side of the building. Taylor street runs east and west. Plaintiff in error and his wife lived in the rear apartment of the first floor of the same building for a considerable time but removed therefrom in June or July previous, and on the day in question they were residing at 1604 Prairie avenue, in a different part of the city. On the morning in question Mrs. Palombizio and her husband, Edward, were found dead in their apartment by police officers. Mrs. Palombizio was found upon the floor in the rear bed-room, shot through the head. Her clothes were partly torn from her body and an ordinary pen was sticking in her stomach. Her husband was found lying in the bath-tub in the bath-room, also dead from a bullet wound. There was no eye-witness to the killing and the evidence produced upon the trial was purely circumstantial.

It is contended by plaintiff in error that the State's attorney was guilty of prejudicial misconduct in his argu-

ment to the jury.   We have examined the abstract, which is the pleading of plaintiff in error, with care, and we do not find that any remarks of any counsel were preserved therein.   *People v. Adams,* 289 Ill. 339.

It is next contended that the court erred in admitting in evidence a bullet found in the bath-room where Palombizio had been shot to death.   This bullet was found at least twelve hours after the murder by a witness who had previously inspected the bath-room at nine o'clock in the morning and at noon and had then found nothing.   There is no evidence as to how long the bullet had been there or that it was in any way connected with Reno or the murder.   To render this bullet competent as evidence it should have been connected in some way with Reno or shown to have had some connection with the killing of deceased or her husband.

Marie Pacifico testified that on the morning of March 23, 1925, about six o'clock, she arose from her bed and went into her kitchen; that she started to light a fire and as she was doing so she heard a rap on the door; that she asked who was there, and not getting any response went to the door; that she unlocked it, and as she opened the door a man, whom she identified as plaintiff in error, stuck a revolver against her breast and fired.   The State introduced in evidence a bullet claimed to have been taken from her body, and it is contended by plaintiff in error that the introduction of this evidence was erroneous because it was proof of a separate and distinct crime.   Antoinette Tursi, a witness for the People, residing in the rear flat on the second floor at 1345 West Taylor street, testified that at about half-past five on the morning of March 23, 1925, she got up and went out to the grocery store; that as she did so she saw a man standing near the gangway; that she went to the store and got back about ten minutes to six; that she then saw a man go through the alley; that she went up-stairs, prepared breakfast and ·lunch for her

husband, and was going back to bed when she heard shots
fired and a woman "holler;" that she then heard two more
shots; that after about five or ten minutes she heard one
shot, which came from the hall; that she heard someone
going down-stairs; that she opened a window and saw a
man going through the alley; that she did not know the
man she saw. The evidence of this witness tends to show
that the attack made upon Mrs. Pacifico was made within
a very few minutes after the murder of the Palombizios,
and the evidence tends to show that both offenses were
committed by the same person. The evidence of Mrs. Pa-
cifico, when taken in connection with that of Mrs. Tursi,
tended to show the presence of plaintiff in error, armed
with a deadly weapon, near the place of the murder within
a very few minutes after its commission, and it was there-
fore competent as tending to prove his guilt.

In *People* v. *Jennings,* 252 Ill. 534, it is said: "The
general rule is, that evidence of a distinct substantive of-
fense cannot be admitted in support of another offense.
(*Farris* v. *People,* 129 Ill. 521; *Addison* v. *People,* 193 id.
405; *People* v. *Cleminson,* 250 id. 135.) But to this rule
there are several well known exceptions. If evidence is
admissible on other general grounds it is no objection to
its admission that it discloses other offenses, even though
they are the subject of indictment. * * * One of the
well known exceptions to the settled rule as to the admis-
sion of evidence as to collateral crimes is, when evidence
of an extraneous crime tends to identify the accused as
the perpetrator of the crime charged.—(6 Ency. of Evi-
dence, 677.)"

It is claimed by plaintiff in error that the court erred
in permitting the State's attorney, over objection, to in-
troduce in evidence a cap claimed to be Reno's. A police
officer testified that he went to Reno's home on March 24,
1925, and found a gray cap in his room. The cap was
taken by him and was offered and admitted in evidence

over objections. Mrs. Tursi testified that the man she saw on the morning of March 23, 1925, wore a dark-brown suit and a gray cap. On cross-examination she admitted that she made a signed statement to a captain of police shortly after the crime and that in her statement she stated with reference to the person whom she had seen, "I cannot state how he was dressed; he was dressed in old clothes; he had an overcoat on." Mrs. Pacifico testified that the person who shot her wore a brown overcoat and a gray cap. Richard Barry, a police sergeant, testified that he saw Mrs. Pacifico and talked with her about seven o'clock in the morning of March 23, 1925, and that she told him that the man who shot her wore a gray overcoat and a brown hat. James Quirk, another police officer, testified that at the hospital, between 6:30 and 6:40 in the morning, she said that the man had on old working clothes. While the cap offered in evidence was not identified as the cap which was worn by the man who did the shooting, plaintiff in error as a witness identified the cap as one belonging to him. Its admission in evidence was not prejudicial error.

It is contended by plaintiff in error that the evidence was not sufficient to establish his guilt beyond a reasonable doubt. He had been an intimate friend of the Palombizios for a considerable time, and when on January 1, 1925, their infant child was christened he was asked to be its godfather, in which capacity he served at the christening. This, the witnesses say, is considered a great honor among Italians. After the ceremony, at noon, a party of friends went to the Palombizio home, where several hours were spent in conversation, dancing, eating, and drinking wine, and all went merrily until between seven and eight o'clock, by which time some of the party were in a state of partial intoxication. At that time Ralph Palombizio, who was at that time living with his brother, Edward, said to plaintiff in error, "Mr. Reno, your wife is going to leave you." Reno asked his wife if it was true, and she said no; that

it was a lie. Reno said that he wanted the thing proved. Ralph Palombizio said, "I will prove it," and they went out of the room and to the Pacifico flat, where they found no one at home and returned, after which there was some loud talking between Reno and Ralph and some quarreling between Ralph and Edward, who by that time was somewhat intoxicated and which resulted in Edward's ordering Ralph out of the house. Reno attempted to intercede with Edward in Ralph's behalf and told Edward that it was not right to chase his brother out. They were talking pretty loud and Mrs. Palombizio said to Reno, "Everything is going wrong for us and you may as well go out of the house too." After some words with Joseph Donfris, Reno, accompanied by his wife and Mrs. Ralph Palombizio, left. Donfris, who had asked the privilege of being godfather to the child but whose services had been declined in Reno's favor, testified that prior to leaving Reno said, "I am going out, but I am going to come back and get you all." This witness testified that prior to this time he had not had any trouble with Reno to speak of—just little arguments between them. His testimony is weakened by the fact that at the coroner's inquest he had testified that Reno did not make any threats. Marcells D'Agostina, a sister of Mrs. Palombizio, testified that she heard Reno say that "he would get even with all of us." Other witnesses present testified that they heard no threats made on this occasion. A few days thereafter Ralph Palombizio informed Reno that the baby was dead. Reno called Mrs. Palombizio by telephone and asked if he could go to the wake. She consented, and Reno and his wife and Mr. and Mrs. Ralph Palombizio went. Prior to going, Reno, as he testifies, without contradiction by Ralph, at the suggestion of Ralph borrowed a revolver. Mrs. Reno and Mr. and Mrs. Ralph Palombizio were present when the revolver was borrowed. The revolver was returned to its owner within a very few days. The Renos, accompanied by Ralph and his wife,

went to the wake. There was no trouble. Reno knelt down and kissed the baby and then went out and bought some flowers, which were placed upon the casket after his return. They stayed a short time, after which they returned to Reno's home. Ralph Palombizio testified that about a month prior to the murder Reno told him that he knew where Edward was employed and that he could get him any time he wanted to. Reno testified that he had never made any threats against the Palombizios.

Marie Pacifico testified that she had known Reno for a considerable time before the murder and had seen him frequently and had talked with him over the telephone; that she took just one look at the man who shot her and saw pock-marks on his face. The man wore a black mask wrapped tightly across his face, having an opening for the eyes. She testified that Reno was the man who shot her. Her testimony in this respect is weakened by the fact that on the morning of the shooting, and within an hour thereafter, she told policemen Barry and Quirk that she did not know the man who shot her. Her husband testified that he saw the man who shot his wife; that he was about ten feet from him, and that he did not know who he was. No witness other than Mrs. Pacifico testified to having seen Reno near the scene of the murder on that morning. There was no evidence as to his possession of a revolver about that time. The police who searched his premises found none. Reno, who testified as a witness, stated positively that he did not leave his home at 1604 Prairie avenue between ten o'clock Sunday night and eight o'clock Monday morning, March 23, 1925; that he was not out of the house during that time; that between 5:30 and 7:00 o'clock on March 23, 1925, he was in bed at 1604 South Prairie avenue with his wife.

Plaintiff in error at all times denied his guilt and there is no evidence in the case of any admission or confession. On the afternoon of the murder, when informed by a friend

that the police were looking for him in connection with the murder, he telephoned the police station and told the officer in charge where he could be found. In the view which we take of this case it is not necessary for us to determine the question whether or not the evidence in the case shows plaintiff in error's guilt beyond a reasonable doubt. The only purpose of the discussion of the evidence in this opinion is to show that it was of such a character as to require that a judgment of conviction carrying with it the death penalty based upon it should be free from error.

Plaintiff in error requested the court to instruct the jury that his wife was not a competent witness in his behalf. The court refused to give this instruction. The object of giving instructions to the jury is that the jury may be informed as to the law pertinent to the facts and circumstances in evidence in the case, to aid them in giving proper consideration to such facts and circumstances. Mrs. Reno was not proffered as a witness by plaintiff in error to corroborate his testimony that he was at home in bed with her at the time of the murder, and a juror not being informed that under the law she was not a competent witness might readily draw the inference that she would have been called if his testimony had been true. The instruction should have been given and its refusal was prejudicial error.

The court at the request of the State's attorney gave the jury the following instruction:

"The court instructs the jury that before a defendant can avail himself of the defense of an alibi, the proof must cover the whole of the time of the commission of the crime, so as to render it impossible or highly improbable that the defendant could have committed the act, and unless the proof in a case covers the whole time, so as to render the commission of the crime by a defendant impossible or highly improbable, then that defense is not available to such defendant."

An instruction, even when it embodies correct propositions of law, should not be given when there is no proper basis for it in the evidence. Plaintiff in error did not, and if his evidence was true could not, call any witness, other than himself, to testify to an alibi. This was the only instruction given on the subject of alibi, and so differs from *People* v. *Thompson,* 321 Ill. 594, where the instruction was immediately followed by another as to the correct rule as to the burden and degree of proof required to render the defense of alibi available. It likewise differs from *People* v. *Schladweiler,* 315 Ill. 553, in that it is couched in different language, and there was no question in that case as to the propriety of giving an instruction on the question of alibi. Here plaintiff in error's testimony covered the entire time of the crime. The instruction was an abstract proposition of law not pertinent to the facts of this case. The situation is similar to that in *People* v. *Braidman,* 323 Ill. 37, where the court, in discussing a like instruction, said: "The effect of the evidence as to Braidman's alibi was probably minimized by an instruction given to the jury which, although the evidence of the alibi covered the whole of the time of the commission of the crime, placed the burden of proof on the defendant to so prove his alibi as to render the commission of the crime by him impossible or highly improbable, and informed the jury that unless such proof was made the defense of alibi was not available to the defendant. The giving of this instruction to the jury under the state of the proof might well be taken by the jury as an intimation by the court that there was some question as to the sufficiency of the alibi other than the question of the veracity of the witnesses." The only effect which the giving of this instruction could have in this case would be to mislead the jury and cause them to look with suspicion upon the testimony of plaintiff in error. This case in its final analysis resolved itself into a question of the jury balancing the testimony of Reno

against that of Mrs. Pacifico, and any action of the court which would tend in any degree to cast suspicion upon his testimony would, of necessity, be prejudicial to him, and it may well be that the action of the court in the matter of these two instructions sufficed to turn the balance against Reno.

While this court will not lightly set aside a judgment of conviction for trivial error, yet before a judgment of conviction depriving a defendant of life or liberty is affirmed, we should be able to say and feel that the record shows that the defendant has not been prejudiced by error in the trial court.

For the error of the criminal court in giving and refusing instructions its judgment is reversed and the cause remanded to that court.
                                    *Reversed and remanded.*