(No. 18577.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* FRED FRUGOLI, Plaintiff in Error.

*Opinion filed April 20, 1929.*

JAMES R. QUINN, for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, ROBERT E. CROWE, State's Attorney, and JAMES B. SEARCY, (EDWARD E. WILSON, and LEE R. LAROCHELLE, of counsel,) for the People.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Plaintiff in error, Fred Frugoli, (hereinafter called the defendant,) was indicted jointly with Paul Hendricks for the crime of robbery while armed with a pistol. Hendricks entered a plea of guilty. The defendant on his plea of not guilty was tried and convicted by a jury. After his motions for a new trial and in arrest of judgment were overruled he was sentenced by the criminal court of Cook county to be imprisoned in the penitentiary for an indeterminate term. He brings the record here for review on writ of error.

Walter R. Knutson, manager of a store of the National Tea Company at 5149 West Chicago avenue, in the city of Chicago, and Bernice DeLaughter, a clerk in the store, testified in substance as follows: About eight o'clock in the morning of March 16, 1927, they and Emily Kapenski, another employee, were in the store of said company and

Knutson was counting out and putting in the cash register the change to be used during the day. He put $35 in the cash register and about $165 of the previous day's receipts under the bread counter. While he was engaged in counting out the money the defendant came into the store and said he wanted some cakes. Miss DeLaughter started to wait on him, and at that time Hendricks came into the store and drew a revolver, which he pointed at Knutson. The defendant also drew a revolver and forced Knutson and the clerks into a back room and took the money from the cash register. Hendricks then ordered Knutson to come out of the back room and show them where he had put the receipts of the previous day. He did so and was then ordered into the back room. After the defendant and Hendricks had gone, Knutson and the other two employees came out of the back room. The $35 that was in the cash register and the $165 under the bread counter were both missing. The defendant covered Knutson with his pistol while he was showing them where the money was. As the defendant and Hendricks left the place they told all three of the employees to stay in the back room. Knutson and Miss DeLaughter both identified the defendant at the Austin police station. Knutson testified that before the day of the robbery he had never seen either of the two men that robbed him, and that on the day he identified the defendant the police officer put him up against the wall and said to witness, "Do you recognize this man?" and that he identified the defendant; that he had a good look at him and did not shake his head "in the negative" in answer to the officer's question. Miss DeLaughter did not testify as to whether or not she had ever before the robbery seen the two men that robbed the store. She testified that when she identified the defendant the officer said to him, "Do you remember this lady?" and that he answered that he had seen her at the National Tea Company's place on Chicago avenue near Laramie, but he did not state when he had seen her there.

Both witnesses also identified Hendricks at the police station about March 17, 1927, two days before they identified the defendant. Both witnesses testified that the defendant took the money from the hiding place under the bread counter. Miss Kapenski was out of the State at the time of the trial and did not testify.

Henry G. Penzin, a police officer of the city of Chicago, testified in substance as follows: He saw the defendant at 7:20 P. M. on March 19 at the Austin police station. He made a statement concerning the National Tea store robbery. Officers Venn, Kane and Leonard were there at the time. Witness asked the defendant if he knew Paul Hendricks, and he said he had known him for a few weeks and met him on March 16, about 7:30 P. M., at Chicago avenue and Clark street. Witness asked him the purpose of their meeting there at that time, and he answered that Hendricks had told him there was a National Tea store on Chicago avenue near Laramie street, and if they went out there they could stick them up and get quite a bit of money. Witness asked the defendant if he went out there, and he answered that he did, and that they got off at Laramie street and went to the store. (Witness then identified the defendant as the one who made the statement.) The defendant then told him that there was a woman and a man there and that Hendricks took them into the rear of the store. He further stated that they then left the store and went to Hendricks' room at 713 Chicago avenue, and that he there gave Hendricks the gun he used, a .32 nickel-plated, loaded revolver, and left it there in the room. Witness asked the defendant if he would sign a statement, and he answered that he would not unless he was advised to do so by his lawyer. The first time witness talked to the defendant he denied having anything to do with the robbery. Witness first saw Hendricks at the Desplaines street station and took him to the Austin station. He asked Hendricks if the defendant was with him when he committed

the robbery at the store of the National Tea Company, and he answered that the defendant was with him at that robbery and was also with him on four other robberies.

William Burke and Raymond Venn, police officers of Chicago, testified that when Miss DeLaughter identified the defendant at the police station as one of the men who took part in the robbery, officer Penzin asked him if had ever seen Miss DeLaughter before, and he replied, "Yes; on Chicago avenue and Laramie street, in the National Tea store." The officers did not testify that the defendant mentioned the date, or anything that indicated the date, that he saw Miss DeLaughter at said store.

It was stipulated by the parties to this suit that the defendant was twenty-three years old.

For the defendant, Paul Hendricks testified that for two months before he testified he had been living in the county jail. He pleaded guilty "in this same court" to the robbery of the National Tea store the day before he testified for the defendant, and was sentenced to the penitentiary at Joliet for a period of not more than ten years. He is one of the parties who committed the robbery. He was arrested by the officers and taken to the Desplaines street station. They did not tell him there for what he was arrested. He was later taken to the Austin avenue police station, and after he was there two or three nights he made a statement in writing to the police. Up to the time he made that statement or confession he had denied that he had anything to do with the robbery. In that statement he implicated the defendant as the party who helped him commit the robbery. He then testified that the defendant was not with him when he committed the robbery and did not assist him in the commission of it. The defendant's counsel asked him the question, "Why did you tell the police officers Fred Frugoli was with you at that time?" This question was objected to by counsel for the State and the court sustained the objection. On cross-examination he

was asked if he did not on the day before, when he pleaded guilty, testify that the defendant was with him when he committed the robbery. The defendant's counsel objected to this question and asked that it be stricken and that the jury be instructed to disregard it entirely. The court overruled the objection, and the witness answered that he did not so testify.

David L. Bane, a witness for the defendant, testified that he was duly licensed to practice law in this State and represented Paul Hendricks by appointment of the court. He was present when Hendricks pleaded guilty before the court. He further stated that Hendricks did not then testify that the defendant was with him at the time of the robbery of the store.

Isabella Frugoli, mother of the defendant, testified that he lived with her during the month of March, 1927, and would get up late in the mornings during that month, and that he did not work during that month. She was then asked by his counsel what time of the day he did get up during that month. The court sustained an objection to the question. The defendant's counsel then stated to the court that he desired to ask the defendant's sister the same questions propounded to the defendant's mother, and the court denied him that privilege but informed him during the examination of the mother that if he wanted to ask specific questions of the witnesses about any particular morning that the defendant got up late he would permit him to do so.

The defendant testified in his own behalf and positively denied that he committed the robbery or assisted in the commission of it, and further testified that he never held up anybody in his life. He saw Knutson at the police station, where the police captain asked him if he recognized the witness, and Knutson shook his head and said "No," but after the captain said, "This man has confessed," Knutson said "Yes." He also testified that he was at home, in

bed, on March 16, 1927, and that he got up about noon of that day.

In rebuttal police officers Penzin and Burke testified for the State that they were present in court the day before, when Hendricks entered his plea of guilty, and that at that time Hendricks said that the defendant was with him in the robbery in question.

The attorney for the defendant in the trial court indicated to the court during the examination of officer Penzin, and before Penzin testified as to any confession or statement of the defendant, that he would make an objection to any testimony of that kind by the officer. The court merely stopped him by abruptly saying to the State's attorney, "Go on." When Penzin proceeded with his testimony far enough to indicate to the defendant's counsel that he was going to testify to a confession of the defendant, counsel made a motion before the court that the testimony the witness had already given indicating that a confession was made be stricken until the State had properly laid the foundation to prove such confession. The court very promptly overruled this motion. Counsel continued to object to the introduction of the testimony of the witness as to such confession on the ground that no proper foundation had been laid for such testimony, and the court continued to overrule such objections. A motion was also made by the defendant to strike this evidence from the record. The motions and the objections were overruled and proper exceptions were saved to those rulings, and those rulings of the court are assigned in this court as error.

In the case of *People* v. *Costello,* 320 Ill. 79, and in a number of other cases, this court has held that a confession of a defendant to which no objection is made is properly admitted in evidence without the introduction of preliminary proof, but that if an objection is made it is the duty of the court to hear, out of the presence of the jury, such evidence as the parties may present as to the

circumstances under which the confession was made, for the purpose of determining whether or not it was voluntarily made or was procured by the pressure of hope or fear or other undue means used for the purpose of producing such confession. This rule of procedure has been stated and discussed in the following cases: *People* v. *Rogers,* 303 Ill. 578; *People* v. *Sweeney,* 304 id. 502; *People* v. *Berardi,* 321 id. 47; *People* v. *Trimm,* 323 id. 530; *People* v. *Ziderowski,* 325 id. 232. This court has frequently held that in such a preliminary hearing the burden of proof is on the State to show that a confession was voluntarily made, and that on failure so to do all evidence as to the confession should be excluded. In the case of *People* v. *Rogers, supra,* it was held that extorting a confession by means of the "sweating process," or by beatings or punishment of the defendant, is a violation of the law and of the prisoner's rights. In the case of *People* v. *Berardi, supra,* it was held that policemen are not authorized to keep parties charged with crime in solitary confinement for several days, without counsel or other advisers, for the purpose of continually questioning them. The statutes and the constitution of this State do not authorize an officer of any character to confine an individual charged with crime, or supposed to be guilty of a crime, for the purpose of eliciting a confession from him by any manner or means. No officer has the right to detain a prisoner for that purpose. On the arrest of a person charged with crime it is the duty of the officer arresting him to either deliver him to jail if he cannot give bail, or to take him before some court or justice of the peace for a preliminary hearing if he has not been charged with a crime by indictment or information. The evidence in the case now before us shows that the two men charged with the robbery were first confined in the Desplaines police station and later in the Austin street police station, and that such confinement and custody by the officers were for the purpose of unlawfully obtaining a con-

fession from them. The evidence further shows that the parties were confined in these stations two or three days and nights and Hendricks was in some manner induced to make a confession, and according to the evidence of the police the defendant was also in some manner induced to make a confession.

An arrest may be made by an officer or by a private person for a criminal offense committed or attempted in his presence, and by an officer when a criminal offense has in fact been committed and he has reasonable ground for believing that the person to be arrested has committed it. When, however, an arrest is made without a warrant, either by an officer or a private person, the person arrested shall without unnecessary delay be taken before the nearest magistrate in the county who will hear the case, for examination, and the prisoner shall be examined and dealt with as in cases of arrests upon warrant. (Hurd's Stat. 1921, chap. 38, secs. 4, 7, p. 1143.) When an indictment is found as a true bill, if the offense is bailable the court shall make an order fixing the amount of bail to be required of the accused. (Crim. Code, div. 12, sec. 1; Const. art. 2, sec. 7.) The clerk of the court in which the indictment is found shall immediately issue process of *capias* for the appearance of such person indicted, directed to the sheriff, coroner, or any constable, etc. If the offense is bailable the clerk shall indorse on the process the amount of bail required by order of the court, and if the court orders the process returnable forthwith, the *capias* shall require the accused to be arrested and brought immediately into court. If the offense is bailable and the writ is not returnable forthwith, the sheriff or other officer shall let him to bail if sufficient bail is offered. If the offense is not bailable or sufficient bail is not offered, the officer making the arrest shall take his body to the jail of the county where the *capias* is returnable, there to remain until discharged in due course of law. If the court shall not be in session when

the officer makes the arrest, such officer may let him to bail conditionally, for his appearance on the date to which the court stands adjourned, if sufficient bail is offered, and the officer taking such bail is authorized and required to administer oaths for the purpose of ascertaining the sufficiency of the bail offered. (Crim. Code, div. 12, secs. 2, 3, 4.) In all criminal prosecutions the accused shall have the right to appear and defend in person and by counsel, to have a copy of the accusation, to meet the witnesses face to face, and to have process to compel the attendance of witnesses in his behalf, and a speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed. (Const. art. 2, sec. 9.)

It is not the right of policemen anywhere in this State to arrest men supposed to be guilty of or charged with crime and confine them in a police station or other such place and deprive them of the lawful right of bail and the right of counsel and of a speedy hearing before a legal tribunal authorized to give such a hearing, by hiding them and moving them from one police station or place to another for the unlawful and criminal purpose of extorting a confession or of obtaining a confession by any means in such stations or places. Section 161 of the Criminal Code, found under the head of "Intimidation," provides that "if two or more persons shall commit an assault and battery on, or shall imprison another within this State, for the purpose of obtaining a confession or revelation tending to criminate the person assaulted, or any other person, or shall assault and batter or imprison another on account of a refusal of such person to make such confession or revelation, the person so offending shall be imprisoned in the penitentiary not less than one year nor more than three years." Section 165 of the Criminal Code provides that "if one or more persons shall threaten violence to the person or property of another, for the purpose of obtaining a confession of crime, * * * the person or persons so

offending shall be severally fined not exceeding $100, or confined in the county jail not more than three months." (Hurd's Stat. 1921, p. 1104.)

The answer made by the State to the question raised by the court's refusal to grant the defendant's motion for a preliminary hearing, out of the presence of the jury, for the purpose of determining whether or not his alleged confession was voluntarily made or was procured by the pressure of hope or fear or other undue means used for the purpose of producing such confession, is, that the defendant did not expressly request a hearing out of the presence of the jury on the admissibility of the alleged confession, and that he did not deny that he made a statement to the police officer or claim that such statement was involuntarily made. The defendant did object to the admission of such statement or confession until a proper foundation was laid for the same, and the court and counsel for the State well knew that by this objection the defendant wanted a hearing out of the presence of the jury for the purposes mentioned. When the objections and the motion were made it was the plain duty of the court, under the rules and practice in this State above stated, to hear the evidence, out of the presence of the jury, for the purposes aforesaid.

The court also erred in refusing to instruct the jury to disregard the evidence of officer Penzin that Hendricks said in the presence of the defendant, "Yes; he was with me on that robbery and on four other robberies." The damage to the defendant could not well be cured by striking the evidence, and it is not very probable that it could have been cured by striking the evidence and by instructing the jury to disregard it. The court did refuse to instruct the jury that they should disregard it in considering whether or not the defendant was guilty. The fact that the statement was made in the presence of the defendant did not make the evidence admissible. No part of the statement was admissible until it was shown not only that it was made

in the presence of the defendant, but that he could with propriety have denied, but did not deny, its truth. (*People v. Ross,* 325 Ill. 417; *People v. Hicketts,* 324 id. 170; *People v. Nitti,* 312 id. 73.) The latter part of the statement by Hendricks that the defendant was with him in four other robberies was not admissible under any circumstances and only served to prejudice the jurors against the defendant, and the fact that it was made in the presence of the defendant and not denied by him would not render it competent. The real and only question that the jurors were trying in the case was that of the guilt or innocence of the defendant of the crime charged. Testimony or statements by any witness or party to the effect that the defendant had committed other crimes was not only incompetent but very prejudicial to the defendant in his trial for the crime charged in the indictment.

The court also erred in refusing to allow Hendricks to answer the following questions by defendant's counsel: "Why did you tell the police officers Fred Frugoli was with you at that time?" "What caused you to make the statement?" "What, if anything, did the police officers do to you or say to you before you made the statement?" "Were there any marks on you at the time?" The witness had just testified that the defendant was not with him when he committed the robbery and did not assist him in the commission of it. He had also stated that he did implicate the defendant as the party who had assisted him in the robbery in a previous statement to the police. Officer Penzin had testified in chief for the People that Hendricks implicated the defendant as one of the robbers. The court should have permitted the witness to answer the questions, but the court sustained the State's objection to every one of them and refused to allow him to explain why his statement to the police when he was imprisoned in the police station differed from his sworn testimony on the trial. On cross-examination Hendricks was asked if he did not on

the day before, when he pleaded guilty, testify that the defendant was with him when he committed the robbery. The defendant objected to this question and later moved to strike the witness' answer to the question, which was to the effect that he did not so testify, on the ground that it was not a proper one to lay the foundation for the impeachment of the witness. The court overruled the objection and the motion to strike.

This court has held that where a witness on the second trial contradicts the testimony he gave against the defendant on the former trial the court should permit the defendant tò show the motive or cause which induced him to change his testimony, and that it was competent to prove that such change arose from remorse, awakened conscience or fear of the vengeance of God. If Hendricks was compelled by the unlawful conduct of the police to make his statement to them against the defendant he should have been allowed to answer the question in explanation of his statement to the police and which statement he testified was untrue. (*People* v. *Simmons,* 274 Ill. 528.) The evident purpose in asking the questions was to show that the witness was induced or compelled to make such statement against defendant by ill-treatment at the hands of the police during the time he was unlawfully imprisoned by them. This ruling practically denied the defendant any possible benefit of the testimony of Hendricks on his behalf and of any possible consideration of Hendricks' testimony by the jury. It also tended to give greater credit to the two policemen who testified in rebuttal that Hendricks testified on his plea of guilty that the defendant was with him when he committed the robbery, as the jury would doubtless give no credit to the testimony of Hendricks on that question and treat the evidence of the policemen in rebuttal as really only contradicted by one witness worthy of consideration, David L. Bane, the attorney for Hendricks, who testified that Hendricks did not testify on his

plea of guilty as the two policemen swore in rebuttal that he did testify.

For the People the court instructed the jury "that before a defendant can avail himself of the defense of an alibi, the proof must cover the whole of the time of the commission of the crime, so as to render it impossible, or highly improbable, that the defendant could have committed the act, and unless the proof in a case covers the whole time, so as to render the commission of the crime by a defendant impossible or highly improbable, then that defense is not available to such defendant." The only evidence in the nature of an alibi was the testimony of the defendant and that of his mother, to the effect that he was not at the place of the robbery and took no part in it but was at home, in bed, on the morning of the robbery and did not get up until about noon. The testimony of the mother that was admitted by the court was too indefinite to be seriously considered on the question of the alibi, and we are not inclined to hold that the court committed error in refusing to allow the mother to answer the question as to what time of day the defendant got up during the month of March, 1927, in view of the court's indication to the defendant's counsel that he would permit the witness to answer specific questions about any particular morning that the defendant got up late that would tend to show that he was at home, in bed, when the robbery was committed. The defendant, however, relied on his defense of an alibi, which was a complete defense if true. The instruction as an abstract proposition of law was correct, but it was not applicable to this case because his alibi covered the whole of the time occupied in commission of the crime. It has been condemned as particularly erroneous where the defendant is the only witness in the case that testified in his behalf on the defense of an alibi, and that is substantially the condition of this record. The giving of this instruction must be held to be error in view of the evidence in the record.

(*People* v. *Reno,* 324 Ill. 484; *People* v. *Braidman,* 323 id. 37.) The jury in reading this instruction, which is a purely abstract proposition of law, would in all probability be impressed with the idea that the court did not think that the defendant's testimony covered the whole time of his alibi and that if the testimony was believed it would not be a defense.

For the errors indicated the judgment of the criminal court is reversed and the cause remanded.

*Reversed and remanded.*