(No. 36256.—

The People of the State of Illinois, Appellee, *vs.* Charles Johnson, Appellant.

*Opinion filed November 30, 1961.—Modified on motion January 16, 1962.*

Thomas P. Sullivan, of Chicago, for appellant.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH, Assistant Attorney General, and JOHN T. GALLAGHER and JAMES R. THOMPSON, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

A jury found the defendant, Charles Johnson, guilty of the crime of rape and fixed the term of his imprisonment at fifteen years. Upon this appeal he urges that the State failed to prove his guilt beyond a reasonable doubt and that the trial court erred in the admission and exclusion of evidence, in instructing the jury and in permitting the jury to fix his sentence.

The complaining witness testified that late on the afternoon of January 24, 1959, she and her son were carrying a cabinet into an alley when the defendant approached and offered to help. She declined his offer. After she had returned to her apartment, the defendant knocked on the door and attempted to sell her some jewelry. She refused and he left, but he returned twice more within a matter of a few minutes. On the last occasion, when she told him to leave, he put his hand into his coat pocket and jammed a hard object against her stomach and told her "don't move and don't holler or I will kill you." He forced her out of the apartment, into a hall and upstairs into a bathroom where he raped her. Before he left, he again threatened her. She returned to her apartment and then went across the street to her aunt's home where she told her what had happened.

Her testimony was corroborated by that of her aunt, by the doctor who examined her and by her son and her brother, both of whom were present when the defendant attempted to sell her the jewelry and when she returned to the apartment. The defendant was arrested on February 1, 1959, as he walked out of a jewelry store located in the

vicinity of the complaining witness' apartment. The arresting officer testified that the defendant said "I expected this. I stayed out of your district for the past week." He testified that the defendant later asked for "a break" and said that he would "be willing to plead to a misdemeanor."

The defendant denied the statements attributed to him by the arresting officer. He testified that he saw the complaining witness late on the afternoon of January 23, rather than January 24, and then volunteered to help her carry a cabinet. He attempted to sell her some costume jewelry and she invited him into her apartment, but he left after she had purchased several pieces and he had refused to sell her additional jewelry on credit. On January 24, he spent the afternoon and early evening helping the woman with whom he was living move to a new apartment and talking and drinking with a neighbor. His testimony was corroborated by the woman, the neighbor's wife, and other witnesses.

The contention that the State failed to prove its case beyond a reasonable doubt is based upon inconsistencies and alleged improbabilities in the testimony of the complaining witness, a discrepancy between the testimony of her son and that of her brother, and the fact that the defendant's alibi was corroborated and his witnesses unimpeached. Apart from a discrepancy as to whether the son was present when the complaining witness returned to the apartment, the testimony of the son and the brother was consistent, and it was for the jury to determine the weight to be given to this discrepancy. It is urged that the inconsistencies in the testimony of the complaining witness concerning her marital and employment status and the number of children she had, together with her assertion that the defendant kept his hand in his coat pocket throughout the rape and her admission that she failed to cry out, weigh heavily in evaluating her testimony. The law does not require outcry where there is justifiable fear of physical violence. The credibility of the witnesses, and the conflicts in their testimony were for the

jury to determine. The complaining witness made immediate complaint and her testimony was corroborated. In our opinion the jury was warranted in finding that the defendant's guilt was established beyond a reasonable doubt.

While the evidence would justify a conviction, the facts were sharply disputed, and it was important that the jury be properly instructed, particularly with respect to the defense of alibi, which was established if the jury believed the testimony of the defendant and the witnesses who corroborated him. On this question the jury was instructed that "before a defendant can avail himself of the defense of an alibi, the proof must cover the whole of the time of the commission of the crime, and unless the proof in a case covers the whole time, so as to render the commission of the crime by a defendant impossible or highly improbable, then the defense is not available to such defendant."

The People admit that this instruction was improper, (*People* v. *Pearson,* 19 Ill.2d 609,) but they contend that the evil was remedied by two other instructions which were also given to the jury. The defendant concedes that insofar as the challenged instruction bore upon the burden of proof, the defect might be regarded as cured by other instructions, (see 19 Ill.2d at 614,) but insists that there remains another defect which was not cured and which, under the facts of this case, adversely affected him. The testimony of the defendant did cover the entire period of the commission of the crime, and he argues that the effect of the instruction was either to disparage his testimony by suggesting that it was not worthy of belief, or to suggest that there was some question concerning the sufficiency of the alibi other than the question of the veracity of the witnesses. See 19 Ill.2d at 615.

The complaining witness testified that she lived at 829 West 14th Street in Chicago and that the crime occurred between 6:00 and 6:30 P.M. This was corroborated by her son, who testified that he and his mother were carrying the

cabinet in the alley between 6:00 and 6:15 P.M., and by her aunt, who testified that the complaining witness arrived at her home between 6:15 and 6:30 P.M.

The defendant testified that during the afternoon and early evening of January 24 he and the woman with whom he lived were moving from an apartment located at 209 East 59th Street to one located a block and a half away. These apartments are about six miles from the scene of the crime. The defendant had no automobile. In addition to making trips from one apartment to the other, the defendant was engaged in drinking with one Al Munn, a friend and neighbor. Munn did not testify, but his wife testified that her husband and the defendant were drinking and that she ordered them to stop drinking in the hall of the apartment building. She testified that they were still drinking at 5:30 or 6:00 P.M. when she went to sleep.

The woman who lived with the defendant testified that he left their apartment just before 5:00 P.M. Thereafter she also left, and the defendant was in the apartment when she returned between 6:20 and 6:30. The defendant and Munn continued drinking and ultimately a dispute arose, as a result of which Munn produced a small hatchet and the defendant an old shotgun. The police were called. A police officer testified that at 8:20 P.M. he investigated an altercation at the defendant's apartment building, and found the defendant and Munn having a minor disturbance. The two men told him that they were lifelong friends, and no arrest was made.

Under the instruction that was given the jury could have concluded that the defendant's alibi witnesses were telling the truth, but that the defense failed because the witnesses other than the defendant were unable to establish his whereabouts during the entire period when the crime was alleged to have occurred. Moreover, the testimony of the defendant himself did cover the entire period, and if it was believed it was sufficient to raise a reasonable doubt as to his guilt.

" 'The giving of this instruction to the jury under the state of the proof might well be taken by the jury as an intimation by the court that there was some question as to the sufficiency of the alibi other than the question of the veracity of the witnesses.' The only effect which the giving of this instruction could have in this case would be to mislead the jury and cause them to look with suspicion upon the testimony of the plaintiff in error." *People* v. *Reno,* 324 Ill. 484, 493; *People* v. *Braidman,* 323 Ill. 37, 41; *People* v. *Frugoli,* 334 Ill. 324, 337-338; *People* v. *Lacey,* 339 Ill. 480, 488; *People* v. *Ryan,* 349 Ill. 637, 640-641; *People* v. *Gardner,* 4 Ill.2d 232, 240.

In the last analysis, the essential question for the jury was to determine which witnesses were telling the truth, and the defendant was entitled to have that question determined under accurate instructions. Errors have been alleged with respect to the admission and exclusion of evidence but they are unlikely to recur upon a new trial and we find it unnecessary to discuss them.

The defendant also argues that the court erred in permitting the jury to fix his sentence and that section 1 of the Sentence and Parole Act (Ill. Rev. Stat. 1959, chap. 38, par. 801) unconstitutionally discriminates against defendants who are charged with the crimes enumerated in that section because it denies to them an opportunity to offer evidence in mitigation before the tribunal that fixes sentence. It is unnecessary to discuss this contention because the statutory provision which the defendant attacks has been repealed by the Criminal Code of 1961, which becomes effective January 1, 1962. (Ill. Rev. Stat. 1961, chap. 38, par. 34—4.) Under that Code all penalties are to be imposed by the judge rather than the jury, and the question raised by the defendant will therefore not arise upon a new trial. (Ill. Rev. Stat. 1961, chap. 38, par. 1—7(b).) The change in the method of sentencing is not a change which deprives a defendant of a substantial right that had accrued to him when the alleged

offense was committed, and the new procedural provision may be applied in this case, as in other cases in which a verdict is rendered after January 1, 1962, without violating section 10 of article I of the United States constitution or section 14 of article II of the constitution of Illinois which prohibit the enactment of *ex post facto* laws. *Beazell* v. *Ohio,* 269 U.S. 167, 70 L. ed. 216; *Holt* v. *State,* 2 Tex. 363; *Marion* v. *State,* 20 Neb. 233, 29 N.W. 911; 16A C.J.S., Const. Law, § 445.

The judgment of the criminal court of Cook County is reversed, and the cause is remanded for a new trial.

*Reversed and remanded.*