**People of the State of Illinois, Plaintiff-Appellee, v. Fred Oparka, Defendant-Appellant.**

Gen. No. 52,611.

First District, Second Division.

January 21, 1969.

Manning K. Leiter, of Chicago, for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane, Assistant State's Attorney, of counsel), for appellee.

MR. JUSTICE McNAMARA delivered the opinion of the court.

The defendant, Fred Oparka, was charged with the crime of rape. He was found guilty at a jury trial, and the jury fixed his punishment as imprisonment in the penitentiary for a term of 100 years. The defendant appeals from the judgment entered on the verdict, contending that the trial court erred in giving a certain State's instruction and in refusing a certain tendered defendant's instruction. A summary of the facts follows.

The complainant testified that she and her fiance were seated in a parked automobile at about 3:00 a. m. on August 9, 1959, in the vicinity of East 119th Street in Chicago. Defendant and John Cipich forced their way into the car at gunpoint. After forcing the girl's escort into the rear seat, the pair drove to an isolated area. The complainant was seated between Cipich and the defendant in the front seat during this ride. While defendant held her fiance at gunpoint in the automobile, Cipich dragged the complainant, fighting and crying, into an abandoned building. After beating her, Cipich raped her and forced her to commit an act of oral copulation. Cipich then left the complainant, and defendant entered the room and also raped her and forced her to commit an act of oral copulation. Cipich returned to the room and warned defendant that the police would be checking the building at 5:00 a. m. and that it was now 4:45 a. m. Defendant continued to submit the complainant to further indignities for a few minutes. The pair, with defendant driving, then drove the complainant and her escort back to within a block of where they had been parked. They wiped their fingerprints from the car, and defendant took the car keys. Her escort was able to get a passing motorist to take complainant to a nearby hospital. The complainant and her fiance identified defendant at a lineup and again at trial.

Dr. Aaron Heimbach, who treated the complainant, testified that she had sustained a broken nose, two black eyes, bruises on her chest and lacerations about the vagina.

Two police officers of the Chicago Police Department testified that they arrested defendant two days after the above crime, and at the time of his arrest they found a loaded gun. Both officers testified that defendant orally admitted participation in the rape, but that he refused to sign a written confession.

William Thomas, a gas station attendant, testified for the State that the defendant came to the station at about 9:00 a. m. on August 9, 1959, and gave him a watch in settlement of a prior debt. Complainant's fiance testified that it was the same watch taken from him during the commission of the crime.

Defendant testified that on the night of the occurrence, he was with friends until about 1:30 a. m. and arrived home about 1:45 a. m. He talked with his sister until 3:00 a. m. when she retired. About 3:45 a. m., a friend of his sister's called, and he awakened her. He then dressed and went to a friend's house, and the two of them went to a restaurant where they stayed until about 8:00 a. m. He also testified that the oral confession was false and the result of coercion by the police. (Prior to trial, the court conducted a hearing on defendant's motion to suppress the oral confession on the ground that it was involuntary. The court found that the admissions were made voluntarily.)

Patricia Zamich, defendant's sister, testified that defendant came home about 2:00 a. m. on the morning of the occurrence. They talked until about 3:15 a. m., when she went to bed. He later awakened her at about 3:45 a. m. because of a telephone call. She did not see defendant again that morning.

Defendant's first contention on appeal is that the trial court committed prejudicial error by giving State's In-

struction No. 4 to the jury. The instruction given without objection was as follows:

> "The court instructs the jury, as a matter of law, that before a defendant can avail himself of the defense of an alibi the proof must cover the whole of the time of the commission of the crime and be supported by such facts and circumstances in evidence as are sufficient when considered in connection with all the other evidence in the case to create in the minds of the jury a reasonable doubt of the truth of the charge against the defendant."

Defendant argues that in instructing the jury that the defense of alibi must cover the entire time of the commission of the crime, the court committed reversible error since the jury could have believed that defendant's sister was telling the truth but that the defense failed because she was unable to establish his whereabouts during the entire period when the crime was alleged to have occurred, citing People v. Johnson, 23 Ill2d 465, 178 NE2d 878 (1961).

However, in People v. Naujokas, 25 Ill2d 32, 182 NE 2d 700 (1962), the Supreme Court affirmed a conviction in which a given instruction recited that the proof of alibi must cover the entire period of the commission of the crime. Although in that case, defendant did not testify, he produced alibi witnesses, and the court found that there were gaps in the time accounted for by the alibi witnesses. While criticizing the instruction, the court stated at page 36:

> "In carefully considering the present record, the positive identification of the accused, his confession, and the other facts and circumstances, we cannot find that the ultimate outcome of the trial could have been affected by giving the challenged instruction."

Similarly, in the instant case, we do not believe that the outcome of the trial could have been affected by giving the instruction in question.

The complainant and her escort, both having had excellent and lengthy opportunities to observe him, positively identified defendant as one of the perpetrators of the crime. Two police officers testified as to defendant's oral confession, a confession which the court found to have been given voluntarily. Moreover, a witness testified that a few hours after the crime had been committed, the defendant gave him a watch in settlement of an old debt. That same watch was identified by the complainant's fiance as one taken from him during the commission of the crime.

People v. Johnson, supra, cited by defendant, is clearly distinguishable from the case at bar. In that case, the court held that an instruction requiring that the alibi must cover the entire time of the crime constituted reversible error. But there, while finding that the State had presented sufficient evidence to justify a conviction, the court also pointed out that the facts were sharply disputed, that there was a discrepancy between the testimony of two of the State's witnesses, and that there were several inconsistencies in the testimony of the complainant. Moreover, the instruction in the Johnson case, in addition to stating that the proof of alibi must cover the whole of the time of the commission of the crime, went on to add the words "so as to render the commission of the crime by a defendant impossible or highly improbable." The court held that this instruction may have caused the jury to think that there was some question about defendant's alibi other than the veracity of the witnesses. In People v. Smith, 25 Ill2d 219, 184 NE2d 841 (1962), the court approved the same instruction given in the case at bar, because the language of the

instruction did not imply that defendant's evidence was insufficient.

■ We conclude that while the instruction in question should not have been given, in view of the overwhelming evidence of defendant's guilt presented by the State, it did not constitute prejudicial error and does not require reversal.

The defendant also argues that the trial court's refusal to give a certain tendered unnumbered instruction resulted in prejudicial error. The instruction was as follows:

> "The court instructs the jury that if they find the defendant guilty they need not follow any recommendation of sentence made by the prosecutor. The purpose of the imposition of a term of penal servitude upon a person convicted of a crime is not only to punish the offender for his wrongdoing and to deter others from committing like offenses, but to rehabilitate him, in order that he might again live in society as a useful citizen; and each of these purposes must be considered together with all the facts in the case by the jury arriving at the sentence to be imposed. By giving this instruction the court does not intend to express any opinion one way or the other as to the guilt or innocence of the defendant."

Under the statute in effect at the time of trial in 1960, the jury fixed the sentences in certain crimes, including rape (Ill Rev Stats 1959, c 38, § 801). The defendant argues that if the jury had been instructed on the issue of rehabilitation, they might have imposed a less severe sentence on defendant. The State argues that if such instruction had been given, it would have been an error prejudicial to the defendant. The State contends that if the jury had been instructed on the matter of rehabilitation, with the suggestion accompanying it that defendant might be released, the jury would have imposed a

heavier sentence because of the revolting facts of the crime.

■ While not agreeing with the State's argument that the giving of such an instruction would have been prejudicial to the defendant, we find that the trial court did not err in refusing such an instruction.

No case has been cited to us, nor have we found any case discussing such an instruction. However, we conclude that under the statute then in effect it was the duty of the jury to determine guilt or innocence from the evidence presented, and after finding the defendant guilty, to fix a sentence commensurate with the guilt and within the limits stated by the court in its instruction.

Defendant cites People v. Brown, 60 Ill App2d 447, 208 NE2d 629 (1965), in support of his contention that the above instruction should have been given, but it is not in point. There it was held that the possibility of rehabilitation should be a factor in sentencing, but that case involved sentencing by a trial judge after a hearing in mitigation and aggravation, with the defendant's entire background before him.

The instruction requested by defendant would have served only to confuse the jury. They arrived at a sentence within the statutory limits outlined in the court's instructions. The court did not err in refusing the instruction.

■ The defendant also argues that the trial court committed prejudicial error in refusing to give the first sentence of the above instruction as a separate instruction: "The court instructs the jury that if they find the defendant guilty they need not follow any recommendation of sentence made by the prosecutor." While there were comments at the conference on instructions between counsel and court regarding the possible submission of such an instruction, the record clearly indicates that no

such separate instruction was tendered by the defense. We also note that the jury was well instructed as to its power to sentence, and that the assistant State's Attorney in his closing argument pointed out that the jury had the duty to fix the sentence.

For the foregoing reasons, the judgment of the Circuit Court is affirmed.

Judgment affirmed.

LYONS, P. J. and BURKE, J., concur.