(No. 33244.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* CLAYTON E. GARDNER *et al.*, Plaintiffs in Error.

*Opinion filed November 18, 1954.*

ROBERT H. JONES, and ROY P. HULL, (THOMAS B. KENNEDY, of counsel,) all of Peoria, for plaintiffs in error.

LATHAM CASTLE, Attorney General, of Springfield, and JAMES P. KELLSTEDT, State's Attorney, of Peoria, (FRED G. LEACH, GEORGE W. SCHWANER, JR., and ROBERT E. HUNT, of counsel,) for the People.

Mr. JUSTICE FULTON prepared the following opinion prior to his resignation and it has been adopted and filed as the opinion of the court:

Plaintiffs in error, Clayton E. Gardner and Allen Lindquist, were charged with robbery and armed robbery by the grand jury of Peoria County in indictments filed in the circuit court of that county at the January, 1953, term. They entered pleas of not guilty and were tried and found guilty by a jury of the crimes charged. Each was sentenced to serve a term of not less than seven years nor more than ten years in the Illinois penitentiary. By writ of error they seek a review of their judgments of conviction, the principal errors assigned being that the evidence does not establish the guilt of plaintiffs in error beyond a reasonable doubt; that the court erred in giving certain instructions on behalf of the People; that the court erred in permitting the People to show that a defense witness had been convicted of a crime, not infamous; that error·was committed in permitting the People to have two closing arguments and that there was·prejudicial misconduct on the part of the State's Attorney.

Only three witnesses testified for the People, the victim of the robbery and two police officers who investigated the crime. The conviction of plaintiffs in error rests entirely on their identification by the complaining witness

under circumstances as hereinafter related. The evidence shows that the complaining witness, George Christopher, was employed as a waiter at the Pere Marquette Hotel in the city of Peoria. At about 1:30 A.M. on Sunday, January 11, 1953, he finished work at the hotel and proceeded to walk toward his home which was located at 824 North Monroe Street in the north part of the city. As Christopher was walking north on Monroe Street a short distance south of its intersection with Green Street, at a point not far distant from his home, he was accosted by two men who approached from the opposite direction. One of these men stopped just to the right of the witness, the other at his left. At the time they were only a couple of feet away. There was a street light at the corner of Green and Monroe streets located some 80 to 120 feet behind the two men. The man on Chrisopher's right produced a gun and thrust it into his side, demanding his money. When Christopher demurred, this man told his companion to "hit him," whereupon the man on the left extracted Christopher's wallet from his pocket. All cash was removed from the wallet after Christopher requested that it be returned. Both men then fled in an easterly direction on Green Street after warning Christopher not to look.

Complaining witness then proceeded to his home where he called the police. The call came into the department at about 1:45 A.M. Police officers Scovil and Mull responded but found no suspicious persons in the neighborhood. Presumably Christopher gave them a description of his assailants. At the trial Christopher described the man who had stood on his right as short and stocky with black hair, cut crew style, and black straight eyebrows. He described the other as taller and light complexioned, with light hair combed straight back. He stated that both were wearing short jackets. He was unable to give any further description of their clothing. He did not know whether their jackets were open or closed, or whether they had on shirts.

He gave no particulars about facial characteristics and was uncertain about height except to say that one was taller than the other. He was positive in stating, however, that the men in court were the robbers.

Shortly after midnight on the day following the robbery the two investigating officers brought pictures of both plaintiffs in error to Christopher at his place of employment. These had been obtained from police department files. No other pictures were produced or shown to the complaining witness at the time. It fairly appears from all the testimony that Christopher was uncertain about identification at this time. Later, on a date not clearly appearing from the evidence but presumably within a day or two of viewing the pictures, Christopher was brought to the police station at about 2 :oo A.M. Plaintiffs in error had been arrested "from their pictures" that same night and taken from their homes to the police station. Christopher was stationed in a room where he could not be seen but from which he could see into an adjoining room through a one-way transparent mirror which was about one foot wide and three feet long. Plaintiff in error Lindquist who was unaware of the presence of the complaining witness was first brought into this adjoining room. After viewing him  through the mirror, Christopher at first stated he was not sure but later stated: "Yes, that's the boy." A few minutes later he identified plaintiff in error Gardner as being one of the robbers, using the same method of viewing the accused. But at the trial he could not recall how either of the suspects was dressed at the time he viewed them at the police station and he particularly did not recall whether either one had a jacket on at the time. It is noteworthy that officer Scovil who was present in the room with Christopher at the time he viewed the suspects later told a representative of the State's Attorney's office that he did not think these were the boys; that he knew of other boys resembling the defendants who had

been in trouble before. Officer Mull who was also assigned to the case did not testify at the trial.

The only defense interposed by plaintiffs in error was that of alibi. On behalf of Lindquist five witnesses, all of whom knew him personally, stated that he was in their presence at the Mike and Mike Tavern located at the corner of First and Sanford streets in the south part of the city of Peoria from between 10:30 and 11:00 P.M. on Saturday, January 10, 1953, to 3:00 A.M. the following morning with the exception of 5 or 10 minutes at about 2:30 A.M. when Lindquist was absent. Each of these witnesses described Lindquist as wearing a green service station uniform with the name of the proprietor inscribed on the front and a green cap to match. Two of the witnesses described Lindquist's hair as being long at the time. His sister, Joan Lindquist, also testified that he did not have a crew cut at the time; that he had not worn his hair short since June or July of 1952. Lindquist testified in his own behalf and denied participating in the robbery. His story of his whereabouts at the time of the crime is corroborated by the witnesses testifying in his behalf. He stated that he left the Mike and Mike Tavern at about 2:30 A.M. to visit another tavern across the street but that he returned in a few minutes; that he finally left to go to his home at 3:00 A.M.

On behalf of plaintiff in error Gardner, two witnesses testified that he was in a restaurant located at 305 East State Street from about 1:00 A.M. on the morning of January 11 until 2:30 A.M. One of these witnesses was the proprietor of the restaurant. The other was a personal friend of Gardner's who testified that they were together continuously from about 7:30 P.M. on January 10 until after 3:00 A.M. the following morning. Gardner also testified in his own behalf, denied commission of the crime and gave a detailed account of his movements which placed

him in the restaurant in question at the time of the commission of the crime.

The foregoing is but a brief résumé of the evidence, but it clearly appears that if the testimony of the alibi witnesses is to be believed, it covers the entire time during which the crime was committed—that time having been fixed with great certainty by the complaining witness and the police officers at between 1:30 and 1:45 A.M. The alibi witnesses place both defendants at locations in the south part of the city at the same time that the offense was taking place in the north part. Thus the jury was presented with a very close case and it was their duty to weigh carefully the testimony of the alibi witnesses against the testimony of the complaining witness because obviously both could not be right. Plaintiffs in error could not be in two different places at the same time and it cannot be contended that the alibi witnesses could be right and it also be possible that plaintiffs in error could have been at the scene of the crime. The only way the jury could have reached the verdict it did would have been to find that the testimony of the alibi witnesses was not credible. Under the circumstances presented it was essential that the jury be properly instructed as to the law and that it be free to weigh and consider the alibi testimony along with all the other evidence in the case in deciding the guilt or innocence of plaintiffs in error.

The trial court gave the following instruction on the question of alibi: "The Court instructs the jury that the theory of alibi in this case is that the defendants were so far removed from the scene of the alleged assault at the time of its commission as to make it impossible that they could have committed it, and even though the jury may believe from the evidence in the case that the defendants were at other and different places than the scene of the assault on the same evening such assault, if any, was made,

nevertheless, if the jury further believes from the evidence in the case, beyond a reasonable doubt, that the defendants could have reasonably been at the place of such assault at the time thereof, and also at such other place or places on the same evening, and at the time or times mentioned by the witnesses in the case, that then the defense of alibi cannot avail the defendants." Upon the facts appearing at the trial this instruction was highly prejudicial because it had the effect of telling the jury that it might ignore the testimony of the witnesses for the plaintiffs in error if it wished. It ignored completely the fact that the entire time during which the crime was committed was covered by the alibi witnesses. In that respect it is not unlike the instruction condemned by the court in *People* v. *Ryan,* 349 Ill. 637, which was as follows: "The court instructs the jury that one of the defenses relied upon by the defendant is that of alibi. You are further instructed, that although you may believe, from the evidence, that the movements of the defendant may have been accounted for at some part or portion of the time before and at the commission of the crime charged in the indictment, still, before this defense is entitled to consideration, it must appear that at the very time of the commission of the crime charged in the indictment the defendant was at another place so far away or under such circumstances that he could not, with ordinary exertion, have reached the place where the crime of the robbery was committed, so as to have participated therein." That instruction was also given under circumstances where the entire time had been covered by the alibi witnesses. In holding that the giving of the instruction was prejudicial error the court observed at page 640: "The evidence introduced by the plaintiff in error tended to show that he was elsewhere than at the scene of the crime at the time it was committed. The whole period of time involved in the charge was covered by that evidence. The fourth instruction, however,

informed the jury that although the movements of the defendant 'may have been accounted for at some part or portion of the time before and at the commission of the crime charged' yet, before an alibi is entitled to consideration, 'it must appear that at the very time of the commission of the crime charged,' the defendant was at a point so distant that he could not have participated in the commission of the offense. The instruction, therefore, was not based upon the evidence, and in the state of the proof might well be taken by the jury as an intimation that there was some question concerning the sufficiency of the alibi other than the question of the veracity of the witnesses. (*People* v. *Fisher,* 295 Ill. 250; *People* v. *Braidman,* 323 Ill. 37; *People* v. *Reno,* 324 Ill. 484; *People* v. *Frugoli,* 334 Ill. 324; *People* v. *Lacey,* 339 Ill. 480.) Although the evidence to prove an alibi may be insufficient of itself to establish the fact, it may be considered by the jury for the purpose of raising a reasonable doubt of guilt on all the evidence. The defendant is entitled to an acquittal if the evidence respecting an alibi, together with all the other evidence in the case, raises a reasonable doubt of his guilt. (*Waters* v. *People,* 172 Ill. 367, 375; *People* v. *Lacey,* 339 Ill. 480.) The effect of the instruction was to minimize, if not to exclude, the evidence introduced by the plaintiff in error, and the instruction was necessarily prejudicial to him." In the case of *People* v. *Lacey,* 339 Ill. 480, the alibi testimony also covered the entire time of the commission of the offense and the following instruction was given: "The court instructs the jury that before a defendant can avail himself of the defense of an alibi, the proof must cover the whole of the time of the commission of the crime, so as to render it impossible, or highly improbable, that the defendant could have committed the act and unless the proof in a case covers the whole time, so as to render the commission of the crime by a defendant impossible or highly improbable, then that defense is not

available to such defendant." In holding that the instruction was prejudicial under the circumstances and should not have been given we said: "In this case the evidence of plaintiff in error's alibi witnesses covered the whole of the time of the commission of the offense, and the giving of this instruction to the jury under this state of the proof might well be taken by the jury as an intimation by the court that there was some question as to the sufficiency of the alibi other than the question of the veracity of the witnesses. While the giving of this instruction has been held in several cases, including *People* v. *Schladweiler,* 315 Ill. 553, to be proper where the evidence warrants it, yet where, as in this case, the evidence of the alibi witnesses covered the entire time it was held to be reversible error. *People* v. *Frugoli,* 334 Ill. 324; *People* v. *Reno,* 324 Ill. 484; *People* v. *Braidman,* 323 Ill. 37." The wording of the questioned instructions in these earlier cases is not identical with the wording of the instruction under consideration but the effect is the same and the jury might well take it as the expression of a belief by the court that the defense of alibi was insufficient entirely aside from the question of the veracity of the witnesses. Under such circumstances, it could well have the effect of depriving plaintiffs in error of their only defense. However proper the instruction might be if the facts warrant it, it was improper as applied to the facts of this case.

The trial court gave the jury the following instruction on circumstantial evidence: "You are instructed that circumstantial evidence is legal evidence in criminal cases and is the proof of such facts and circumstances, connected with or surrounding the commission of the alleged crime, as tends to show the guilt or innocence of the party charged. If the facts and circumstances shown by the evidence in this case are sufficient to satisfy the jury, beyond a reasonable doubt, of the guilt of the defendants, you will be justified in finding them guilty." This instruction was im-

proper, because nothing but direct evidence was involved in this case, the only testimony being that of the complaining witness who identified plaintiffs in error, the testimony of the police officers concerning the identification of the plaintiffs in error and the testimony of the alibi witnesses, all as above related. This court has frequently condemned the practice of giving instructions on circumstantial evidence where there is nothing but direct evidence in the case. (*People* v. *McGeoghegan,* 325 Ill. 337, 354; *People* v. *Ravenscroft,* 325 Ill. 225, 228; *People* v. *Parks,* 321 Ill. 143, 151; *Kevern* v. *People,* 224 Ill. 170, 175.) Indeed, the giving of such an instruction may under certain circumstances constitute prejudicial error. (*People* v. *Ravenscroft,* 325 Ill. 225; *Cunningham* v. *People,* 210 Ill. 410.) In a case such as this with the evidence close and conflicting, plaintiffs in error were entitled to have the instructions confined to those matters applicable to the facts.

Other errors are assigned, but we find it unnecessary to discuss them. For the errors indicated, the judgment of the circuit court of Peoria County is reversed and the cause is remanded for a new trial.

*Reversed and remanded.*