THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
LARRY WILLIAMS *et al.*, Defendants-Appellants.

First District (2nd Division)   No. 62453

Opinion filed August 9, 1977.

82

Robert E. Zeitner, of Chicago, for appellant Marcel Moore.

James Geis, of State Appellate Defender's Office, of Chicago, for appellant Richard Hall.

James Doherty, Public Defender, of Chicago, for appellant Larry Williams.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Iris E. Sholder, and Edward D. Stern, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE STAMOS delivered the opinion of the court:

Defendants, Larry Williams, Richard Hall and Marcel Moore, were charged by indictment with the offense of armed robbery in violation of section 18—2 of the Criminal Code of 1961 (Ill. Rev. Stat. 1971, ch. 38, par. 18—2). Upon a joint jury trial each defendant was found to be guilty as charged and judgments were entered on the verdicts. Defendant Williams was sentenced to serve a term of confinement in the Illinois State Penitentiary of 4 years to 4 years, 1 day; defendant Hall was sentenced to serve a term of 5 to 15 years; and, defendant Moore was sentenced to serve a term of 25 to 60 years.

Each defendant has appealed and presents several issues for our consideration. Defendant Hall contends that his constitutional right to confront a witness was violated by the testimony of a State's witness who testified regarding a confession made by defendant Moore outside the presence of defendant Hall and that such error was prejudicial in view of defendant Hall's contention that the evidence properly adduced was insufficient to establish his guilt beyond a reasonable doubt. Defendants Williams and Hall also contend that the trial court erroneously instructed the jury as to the definition of circumstantial evidence. Defendant Moore asserts that the prosecutor's closing argument, comparing the viciousness of the instant crime to life in the jungle, was improper and served to deny defendant a fair trial and that his sentence was excessive in comparison to those meted out to his co-defendants.

A review of the evidence adduced at trial reveals that on June 24, 1972, Ollie Wilson owned and operated the W&W Food and Liquor Store located at 401 W. 95th Street in Chicago, Illinois. At approximately 10:30 p.m. on that date Wilson was present in the store along with his cashier, Herman Williams, and a customer, Rufus Willis. Wilson was standing at the rear of the store between the meat counter and a beer cooler. Williams was tending the cash register located at the front of the store. Willis was standing in an aisle near the beer cooler.

At 10:40 p.m., two men entered the store and stopped near the cash register. Within seconds they were joined by two other men who walked to the rear and positioned themselves near a telephone on the wall. At this point, one of the individuals near the cash register drew a gun, placed it to Williams' face and announced a holdup. The man removed $250-300 from the till.

As the holdup was announced, the two men who had positioned themselves at the rear of the store displayed weapons. One bandit put a gun to Willis' head and took his wallet. The other assailant accosted

Wilson and threatened to shoot unless Wilson came out from behind the counter. Wilson refused and at this point a shot was fired. Wilson also drew a weapon, fired in the direction of the four assailants and heard someone say, "I'm hit." The assailants fled the premises and Wilson summoned police.

Chicago Police Department Investigator John Burge arrived on the scene shortly thereafter and interviewed Wilson and Williams who provided descriptions of the suspects. Burge also observed a trail of blood on the floor. Burge's investigation revealed that Englewood Hospital had admitted one Marcel Moore.

On June 28, 1972, Burge went to the hospital where officials provided him with a bullet which had been surgically removed from Moore's person. Burge submitted the recovered bullet for ballistics examination by the Chicago Police Department Crime Laboratory. The examination established that the bullet recovered from Moore's body had been fired from Ollie Wilson's gun.

Upon his admission to the hospital, Moore said that he was the victim of an armed street gang. However, when advised of his constitutional rights and after being confronted with the ballistics evidence, Moore admitted to Burge that he had participated in the liquor store robbery. During the course of a pretrial hearing Investigator Burge testified that Moore also named two of his confederates—Larry Williams and Richard Hall. Williams and Hall were arrested later that day and were identified by Ollie Wilson and Herman Williams from photographs and a lineup as two of the participants in the armed robbery.

At trial, Ollie Wilson testified that on the night of the robbery, the lights in his store were on "full blast" during the 7-10 minutes in which the assailants were on the premises. Wilson was unable to identify the two men who stopped by the cash register. He identified the two who had proceeded to the store as Hall and Moore and further indicated that he was familiar with Moore inasmuch as Moore had visited the establishment prior to the date in question. Wilson observed Hall during the course of the robbery from a distance of 4-5 feet and identified him as the assailant who accosted Rufus Willis. Wilson identified Moore as the individual who had ordered Wilson from behind the counter upon a threat of death.

On cross-examination, Wilson also stated that at a preliminary hearing held one month after the incident he was asked to identify the participants in the robbery. Wilson identified Moore and, although he had previously identified Hall, Wilson did not identify Hall at the preliminary hearing. Wilson explained that he did not observe Hall in the courtroom on that occasion which Wilson described as a "fast shuffle" in a crowded room.

Herman Williams, the store's cashier, also testified that the robbery was

begun by the entrance of two men who stopped near the cash register. One of these individuals positioned himself 10 feet from the register. Williams identified the latter individual as defendant, Larry Williams. The cashier further testified that after the holdup was announced he was ordered to the rear of the store in the vicinity of a customer, Rufus Willis. The cashier also identified defendant Hall as the robber who subsequently accosted Willis.

On cross-examination, Williams admitted that he had previously lied when he testified that he had initially heard co-defendant Moore's name mentioned in court. Williams stated that prior to his being called to the witness stand he had heard the name mentioned by a passerby. Williams also admitted that earlier that morning and prior to the commencement of trial proceedings, he had identified another man to defense counsel as defendant Moore. It appears that on the latter occasion counsel for defendant Moore managed to be in the room where Williams was waiting to be called to testify. Counsel seized this opportunity to engage in some last minute "discovery" and, as the defendants were being led out to the courtroom, counsel interrogated the witness as to the identity of a defendant-prisoner. Williams explained that the misidentification occurred because, "I don't like to be bothered when I'm out." Based upon that brief encounter, a protracted cross-examination was developed which quickly deteriorated into a colloquy of nonresponsive answers by the witness to the potentially impeaching questions of counsel. No effort was made to complete this impeachment by the admission of rebuttal evidence.

The State also adduced the testimony of Rufus Willis who corroborated the other witness' description of the robbery. Willis was unable to identify any of the perpetrators.

Investigator Burge testified for the State and detailed his investigation of the matter. In particular, Burge stated that immediately after his conversation with Marcel Moore on June 28, 1972, Burge proceeded to a particular address at which he identified and arrested Hall and Williams.

Defendants did not offer any testimony in their own behalf.

Defendant Hall initially contends that his constitutional right to confront a witness was violated by the testimony of Officer Burge who testified regarding a confession made by defendant Moore. According to Hall, this testimony served to implicate him in commission of the armed robbery in violation of the teachings of *Bruton v. United States* (1968), 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620.

Investigator Burge testified on direct examination that co-defendant Moore admitted participating in the robbery of Ollie Wilson's store and that he was joined in this endeavor by three other "individuals." Burge was then asked:

"Q. Now, Investigator Burge, did you have any further conversation with Marcel Moore about this particular robbery at this time?

A. Yes sir.

Q. What, if anything, did you immediately do after having any further conversations?"

Burge responded that he proceeded to a particular address, knocked on the door, was admitted by an unidentified female, ascertained the identity of Williams and Hall and immediately placed them under arrest in connection with the Wilson robbery.

On redirect examination, Burge was questioned further:

"Q. Weren't there three other offenders in the robbery?

A. Yes sir. [Objection; overruled]

Q. Did you attempt to learn anything from Marcel Moore about the other defendants?

A. Yes sir.

Q. Was that your purpose in questioning them further?

A. Yes sir."

■■ At the outset, it may be noted that defendant Hall has failed to properly preserve this issue for appeal. The record fails to establish that Hall filed an oral or written motion for new trial. Consequently the court need not consider the instant allegation of error. *People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856.

■■ ■ In any case, where several persons are jointly indicted the general rule and preferred procedure is that they should be tried together. (*People v. Canaday* (1971), 49 Ill. 2d 416, 275 N.E.2d 356.) The resolution of a motion for severance turns on whether the defenses are of such an antagonistic nature that defendants cannot receive a fair trial when tried together. (*People v. Gendron* (1968), 41 Ill. 2d 351, 243 N.E.2d 208.) When a motion for separate trial is based on the fact that a co-defendant's confession implicates the moving defendant, a severance should be granted unless the prosecution declares that the admission will not be offered in evidence at the trial, or if offered, that all references to the party applying for a severance will be eliminated. *People v. Miller* (1968), 40 Ill. 2d 154, 238 N.E.2d 407.

In the instant case, the precise holdings of *Bruton* and its progeny are inapplicable. Burge did not expressly testify to a confession, admission or statement of Moore's that implicated defendant Hall in any crime. Burge merely testified that he effected Hall's arrest subsequent to Moore's confession. (See *People v. Nelson* (1970), 124 Ill. App. 2d 280, 260 N.E.2d 251.) No testimony was elicited from Burge to the effect that Moore identified Hall as an accomplice or that Moore detailed any role which Hall might have played in the robbery.

Hall further contends that the mere fact that Burge effected Hall's arrest immediately after Moore confessed leads inexorably to the conclusion that Moore provided Burge with Hall's identity and that Moore identified Hall as an accomplice in the Wilson robbery. It has been held that where the names of co-defendants are omitted from the body of a confession the co-defendants may still suffer prejudice if it is apparent from the context that it was the names of the co-defendants which were deleted. (*People v. Bravos* (1969), 114 Ill. App. 2d 298, 252 N.E.2d 776.) In *People v. Harper* (1968), 91 Ill. App. 2d 179, 234 N.E.2d 171, it was held that eliminating the defendant's name from the co-defendant's confession and substituting the word "blank" so that the confession was read to the jury in the form "Me and blank" was insufficient to prevent the confession from implicating defendant and his denial for severance was reversible error. The confession detailed the participation of each defendant in the commission of the offense.

However, a different view of this type of evidence was taken by the Illinois Supreme Court in *People v. Hudson* (1970), 46 Ill. 2d 177, 263 N.E.2d 473, which we find is dispositive of this issue. In *Hudson*, the defendant complained that evidence of an admission by one Riggins, implicating Hudson, was improperly admitted. The testimony in question was elicited from one McFadden. McFadden testified that prior to trial he had occasion to speak to law enforcement officials after which he turned State's evidence against Hudson. McFadden testified that upon his return to the police station, one of the jailers told him that "the boys they got back there are mad at you." McFadden also testified that he had a conversation with Riggins during which Riggins called McFadden a "stool pigeon." Defendant Hudson argued that the hearsay statement of the jailer that "the boys" were mad at McFadden could only mean that Hudson and Riggins were angry with him for implicating them and that testimony that Riggins called McFadden a stool pigeon was an implied admission that Riggins and Hudson were guilty. The court noted that "[t]he testimony in question does not readily lead to the conclusion asserted by the defendant and falls far short of the type of incriminating statement forbidden by *Bruton* * * *". 46 Ill. 2d 177, 196.

■■■ The testimony at issue in the instant case is akin to that found in *Hudson*. In both cases the co-defendant's statements did not expressly or directly implicate the defendant. To be sure, the jury could reasonably infer from the testimony in question that Moore implicated defendant Hall in the Wilson robbery but that inference is not so immediate as to mandate reversal pursuant to *Bruton*. Burge's testimony was confined to his physical activities and to the bare occurrence of his conversations with Moore. (See *People v. Sanders* (1976), 37 Ill. App. 3d 236, 345 N.E.2d 757.) The officer's testimony concerning his investigatory procedures was

necessary and properly admitted under the circumstances. See *People v. Byrd* (1976), 43 Ill. App. 3d 735, 357 N.E.2d 174; *People v. Colletti* (1968), 101 Ill. App. 2d 51, 242 N.E.2d 63, *aff'd* (1971), 48 Ill. 2d 135, 268 N.E.2d 397.

■■ Defendant Hall further contends that the two witnesses who identified him as a perpetrator of the armed robbery were inherently incredible and unworthy of belief. He attacks the credibility of Ollie Wilson on the ground that the witness failed to identify Hall at a preliminary hearing. Wilson testified that the courtroom in which the hearing was held was crowded and rushed and explained that he did not observe Hall in the courtroom on that date. Hence, Wilson did not identify Hall. This testimony evinces no uncertainty as to Wilson's identification of Hall. His testimony was based upon ample opportunity to observe the assailants at close range, under adequate lighting conditions and for an extended period of time. Such testimony is sufficient to support defendant's conviction. *People v. Canale* (1972), 52 Ill. 2d 107, 285 N.E.2d 133.

■■ Hall was also identified by Herman Williams and defendant attacks his testimony based upon the witness' hostile attitude and demeanor. It appears that the witness was generally unimpressed with the quality of our judicial system and all its participants and was offended by endeavors of defense counsel to make the witness look foolish before the jury. Defense counsel's cross-examination and the witness' response thereto dealt with collateral matters. While Williams' conduct on the stand was less than exemplary his identification testimony was not shaken. Like Wilson's, Williams' testimony was grounded upon an ample opportunity to observe the assailant.

■■ Finally, Hall points out that Rufus Willis was unable to identify him as an assailant although Willis was personally robbed by Hall according to Williams and Wilson. Willis testified that he was frightened and intimidated by the robber. A gun was placed to Willis' head during the course of the robbery and his failure to observe the assailant was understandable. His testimony does not serve to exculpate defendant and does not detract from the testimony of Williams or Wilson.

■■ Defendants Williams and Hall jointly contend that the trial court erred in giving the jury the definitional instruction on circumstantial evidence since it is their contention that only direct evidence was presented against them. The trial court gave State's Instruction No. 7, which is IPI-Criminal No. 3.02, and provides:

> "Circumstantial evidence is the proof of facts or circumstances which give rise to a reasonable inference of other facts which tend to show the guilt or innocence of the defendant. Circumstantial

evidence should be considered by you together with all the other evidence in the case in arriving at your verdict."

In light of the fact that considerable circumstantial evidence was adduced against co-defendant Moore, the instruction was properly given.

Defendants Williams and Hall assert that the instruction, on its face, was not limited to Moore. Williams and Hall contend, and the State concedes, that the only evidence adduced against them was direct evidence. This evidence consisted of the eyewitness identifications of Ollie Wilson and Herman Williams.

It does not appear that defendants Williams and Hall proffered an instruction limiting State's Instruction No. 7 in a manner satisfactory to them. It was incumbent upon them to do so and their failure in this regard precludes assertion of this matter as grounds for reversal on appeal. *People v. Lane* (1974), 23 Ill. App. 3d 287, 319 N.E.2d 90.

In any case, the instructions tendered to the jury, considered as a whole, inform the jury that circumstantial evidence adduced against Moore, such as the bullet removed from the latter's body, was not to be considered as evidence against defendants Williams and Hall. In this vein, the jury was instructed that:

"You should give separate consideration to each defendant. Each is entitled to have his case decided on the evidence and the law which is applicable to him.

Any evidence which was limited to some defendants should not be considered by you as to any other defendants." (IPI-Criminal No. 3.05.)

Evidence of the bullet and ballistics tests performed upon it was limited to defendant Moore. Indeed, the circumstantial evidence instruction at issue, on its face, concerns and uses the word "defendant" in its singular form.

Defendants Hall and Williams have failed to establish that they suffered any prejudice, that the instruction was misleading, or that it led the jury improperly to speculate that there were irrelevant facts and circumstances proved which might, or did, authorize defendants' conviction. *Cf. People v. Gardner* (1954), 4 Ill. 2d 232, 122 N.E.2d 578.

■■ Defendant Moore contends that the prosecutor's references in closing argument to defendant's conduct as animalistic and reminiscent of life in the jungle were unfounded and served to deny defendant a fair trial. The remarks in question were improper, however, in light of the various eyewitness and ballistics evidence adduced at trial in support of defendant's confessed participation in the crime, the prosecutor's comments cannot be said to have contributed to defendant's conviction. *People v. Mackey* (1964), 30 Ill. 2d 190, 195 N.E.2d 636.

■■ Defendant Moore finally contends that his sentence is excessive in`proportion to that meted out to his accomplice, Richard Hall. The differences in their criminal backgrounds and their respective roles in the commission of the offense of which they currently stand convicted do not justify the relatively gross disparity in their sentences. Accordingly, the sentence imposed upon Marcel Moore is vacated and the cause is remanded for new sentencing.

For the aforementioned reasons, the judgments of the trial court are affirmed; the sentence of defendant Moore is vacated and the cause is remanded for further proceedings consistent with this opinion.

Affirmed in part; reversed in part and remanded.

DOWNING, P. J., and PERLIN, J., concur.