THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
RORY K. WYATT, Defendant-Appellant.

First District (1st Division)    No. 79-1652

Opinion filed November 10, 1980.

Ralph Ruebner and M. J. Pelletier, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Joan S. Cherry, and Gino P. Naughton, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

Following a jury trial defendant was convicted of murder and armed robbery. (Ill. Rev. Stat. 1977, ch. 38, pars. 9—1 and 18—2.) He was sentenced to indeterminate concurrent terms of 30 to 60 years for murder and 10 to 20 years for armed robbery. On appeal defendant contends that his indeterminate sentences were in gross disparity to the determinate terms of 20 years for murder and 10 years for armed robbery that were imposed on his co-defendant, Walter Taylor, who later pleaded guilty, and such disparity is not justified in the record. Defendant also argues that the trial court relied on improper factors in aggravation when imposing the sentences on him.

The sufficiency of the evidence is not questioned, and we will not detail the evidence presented to establish defendant's guilt at his March 1979 trial except as necessary to address defendant's contentions. Generally, the record establishes that about 10 p.m. on February 15, 1977, police discovered the body of the victim Robert Perkins lying in a field.

Perkins had been shot twice at close range in the right temple, and his body dumped onto the street from his wife's car by two men who returned minutes later to drag the body into a vacant area.

The following day defendant and Walter Taylor were arrested as they stripped a car belonging to the victim's wife. Several items from the car were in defendant's pocket. Shortly after his arrest defendant gave a written confession about the victim's murder. Defendant stated that he, Taylor and the victim were driving about in the latter's car about 9 p.m. on February 15, 1977; they were drinking. At this point Taylor, who was driving, suggested that they "gangster the car," and defendant agreed. This term meant to take the car. Taylor stopped, dragged the victim out of the car and hit him on the face with a gun. As the victim tried to get up from the ground, Taylor shot him twice in the head. Taylor and defendant drove off but returned 15 minutes later. Defendant admitted that he then dragged the victim's body into the bushes while defendant carried the victim's artificial leg. The following day defendant and Taylor agreed to strip the victim's car, but they were arrested by police.

At trial defendant testified that he, Taylor and the victim were drinking as they drove about the area looking for prostitutes. Taylor and the victim argued over money and Taylor pulled a gun and hit the victim. Taylor then dragged the victim from the car and shot him. During this time defendant remained in the car. When Taylor returned, they drove away but returned about 15 minutes later at which time defendant dragged the victim's body a short distance because defendant knew "there was a case." Defendant testified that he did not discuss shooting the victim or robbing him with Taylor, nor did he agree to "gangster" the car with Taylor. Defendant denied assisting Taylor strip the car the next day; he said he just watched. He also denied having any property from the car in his pockets when arrested.

The crimes were committed before February 1, 1978, and the trial held thereafter. Thus defendant was entitled to elect to be sentenced to indeterminate terms as set forth for offenses committed before that date or determinate terms under the Unified Code of Corrections, as amended and effective after that date. (Ill. Rev. Stat. 1979, ch. 38, par. 1008—2—4(b).) The court explained the general difference in the sentencing schemes, and retained defense counsel requested a brief recess to explain the differences. Defendant then elected to be sentenced under the law as it existed at the time of the offenses.

Defendant initially argues that he and Taylor were similarly situated and he should not have received grossly disparate sentences from Taylor. (*E.g.*, *People v. Martin* (1980), 81 Ill. App. 3d 238, 245, 401 N.E.2d 13; *People v. Ziegler* (1979), 78 Ill. App. 3d 490, 499-500, 396 N.E.2d 1160; *People v. Williams* (1977), 52 Ill. App. 3d 81, 90, 367 N.E.2d 167; *People v.*

*Henne* (1973), 10 Ill. App. 3d 179, 180, 293 N.E.2d 172.) Defendant concludes that the record does not justify the disparity of sentences between him and his co-defendant Taylor who pleaded guilty. Defendant directs our attention to his relative youth (currently about 23 years of age), his lack of a criminal record, his roots in the community and reputation as a law-abiding citizen, his honorable military discharge, and his attendance at a junior college as factors in mitigation of sentence. He points out for comparison by means of a supplemental record that Taylor is about his age, and he also had no prior criminal record. But defendant notes that Taylor had not completed high school and was unemployed. Further, defendant claims that his culpability was based on the theory of accountability for Taylor's action. Therefore defendant contends not only that his indeterminate sentences should be reduced but also that the sentences be less than Taylor's sentences.

■■ The initial difficulty in defendant's argument is acceptance of his conclusion that the indeterminate sentences he received are in substantial excess of Taylor's determinate sentences. A review of the respective sentencing schemes demonstrates the invalidity of such conclusion. Under the indeterminate sentencing scheme which previously existed, defendant would have been eligible for parole consideration after serving 20 years less statutory good-time credit which, if fully received, would have rendered him eligible for parole in slight excess of 11 years. *People v. Lykins* (1979), 77 Ill. 2d 35, 40, 394 N.E.2d 1182; *People v. Peter* (1976), 43 Ill. App. 3d 1068, 1071, 358 N.E.2d 31.

The co-defendant Taylor, on the other hand, will be theoretically released after serving 10 years. This would occur because the Unified Code of Corrections (as amended and effective on February 1, 1978) provided for determinate sentences and a system of good conduct sentencing credits. Taylor will receive "one day of good conduct credit for each day of service in prison * * *. Each day of good conduct credit shall reduce by one day the inmate's period of incarceration set by the court." Ill. Rev. Stat. 1979, ch. 38, par. 1003—6—3(a)(2).

However, as *Johnson v. Franzen* (1979), 77 Ill. 2d 513, 518-19, 397 N.E.2d 825, makes clear, the defendant in this case is also entitled to the same day-for-day good conduct credit for his indeterminate sentence as that applicable to Taylor. Since defendant's minimum term of his indeterminate sentence is 30 years, he is not eligible to have the Prisoner Review Board set a release date. (Ill. Rev. Stat. 1979, ch. 38, par. 1003—3—2.1(b).) However, defendant's parole eligibility will occur when he has served "the minimum term of an indeterminate sentence less time credit for good behavior, or 20 years less time credit for good behavior, whichever is less." (Ill. Rev. Stat. 1979, ch. 38, par. 1003—3—3(a)(1).) It is therefore apparent that, if Taylor receives all his good conduct

credits, he will be released after 10 years. Defendant will be eligible for parole consideration in 10 years if he receives all his good conduct credits. There is no gross disparity between the sentences, at least in terms of potential release from the penitentiary. While defendant maintains that he is doubtful that he will be released on parole when he becomes initially eligible for consideration, this is an extremely speculative assumption and in our opinion does not reflect a basis to conclude that there is a gross disparity in the sentences with his co-defendant. Rather, the record suggests that the trial court attempted to give quite similar sentences to defendant and Taylor within the respective statutory sentencing formats they elected.

We must also point out that defendant elected to be sentenced under prior law. Consequently, even if there exists some basis that a slight disparity may exist based on subtle variations between those serving determinate sentences and those serving indeterminate sentences, defendant is the one who brought about this situation because of his election.

In any event defendant asserts that his sentences should be less than Taylor's sentences because his assistance in the crime was not as active as Taylor's participation, and he was merely accountable for Taylor's action. Defendant concludes that he should have received only the minimal sentence because of his lesser role in the crimes. This argument is intertwined with his second principal contention that the trial court considered improper factors in evaluating the sentences to be imposed.

At the defendant's sentencing hearing the trial court intimated that defendant was the shooter and not Taylor. The court stated the latter was driving the victim's car; defendant was in the back seat; and the victim was seated in the front passenger's seat. Thus, the court suggested that it was more likely that defendant shot the victim. The court based its opinion on the testimony of a witness who saw the victim's body dumped from his car. She testified that she was in her house when she heard two loud noises. She immediately went to her living room window but did not see anything. Upon going into the dining room she heard a car speeding up on the street near her dining room window. The car stopped; its door was opened; and a body was pushed out before the car was driven off with two men in it. Several minutes later the two men returned and moved the body. The trial court commented that this witness' testimony conflicted with defendant's version which placed considerably more responsibility for the crimes on Taylor.

■■ The trial court's evaluation of the evidence is not unreasonable, and such evaluation, even if not totally accurate, would at least suggest a greater degree of responsibility for the crimes than defendant would admit. Further, defendant's statement to police and his testimony at trial was untrue if the aforesaid eyewitness' testimony is believed. Defendant's

394

lack of veracity in testifying may be considered in imposing sentence. (*United States v. Grayson* (1978), 438 U.S. 41, 50-51, 57 L. Ed. 2d 582, 589-90, 98 S. Ct. 2610, 2615-16; *People v. Jones* (1972), 52 Ill. 2d 247, 250, 287 N.E.2d 680; *People v. Meeks* (1980), 81 Ill. 2d 524, 411 N.E.2d 9.) We do not find that defendant's arguments that his criminal participation was less or the trial court relied on improper factors in imposing the sentences are sufficiently compelling in view of the record to question those sentences, nor can we say that the sentences imposed on defendant were an abuse of discretion (*People v. Cox* (1980), 82 Ill. 2d 268, 412 N.E.2d 541).

Accordingly, the judgment of the circuit court is affirmed.

Judgment affirmed.

O'CONNOR and CAMPBELL, JJ., concur.